1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   ANGELICA JONES,                         Case No.  14-cv-00313-HSG

             Plaintiff,
8                                           **ORDER DENYING MOTION FOR**
                                            **SUMMARY JUDGMENT**
9         v.
                                            Re: Dkt. No. 42
10  FEDERAL INSURANCE COMPANY,

11           Defendant.

12          Pending before the Court is Defendant Federal Insurance Co.'s motion for summary

13  judgment.  For the reasons articulated below, the motion is DENIED.

14  **I.    BACKGROUND**

15          The following facts are undisputed.  Defendant issued insurance policy number 99-0700-

16  71 ("Policy") to Plaintiff Angelica Jones as part of a "Voluntary Accident Insurance Program" for

17  Pacific Service Employees Association, of which Plaintiff was a member through her employment

18  with Pacific Gas & Electric Co.  Plaintiff's deceased husband was also insured under the terms of

19  the Policy.

20          In relevant part, the Policy provides coverage for "an Accident [that] results in a covered

21  Loss not otherwise excluded."  Dkt. No. 42-2 at 16.  "Accident" is defined as

22                  a sudden, unforeseen, and unexpected event which: 1) happens by
                    chance; 2) arises from a source external to an Insured Person; 3) is
23                  independent of illness, disease or other bodily malfunction or
                    medical or surgical treatment thereof; 4) occurs while the Insured
24                  Person is insured under this policy which is in force; and 5) is the
                    direct cause of loss.
25

26  *Id.* at 30.  The Policy defines "Loss" as "Accidental . . . Loss of Life."  *Id.* at 37.

27          On June 24, 2012, Plaintiff's husband, Rodney Jones, died of a heroin overdose.  The

28  overdose occurred as a result of Mr. Jones's self-injection of heroin while he was alone in his

United States District Court
Northern District of California

bathroom. There was no other cause of his death.

Plaintiff submitted her claim for death benefits under the Policy on July 2, 2012. On September 4, 2012, Defendant advised Plaintiff that the Policy contained a "Narcotics Exclusion" and an "Intoxication Exclusion," and informed Plaintiff that it was still considering the merits of her claim. Dkt. No. 47. Defendant admits now that the Policy contains no such exclusions.

On November 15, 2012, Defendant informed Plaintiff by letter that her claim had been denied. Defendant stated that Plaintiff's claim was not covered by the Policy because "Mr. Jones's death cannot be considered as Accidental since the self-administered overdose of heroin, was not a sudden, unforeseen and unexpected event which happened by chance and did not arise from a source external to Mr. Jones." *Id.*

Defendant filed the pending motion for summary judgment on May 14, 2015. Dkt. No. 42 ("Mot."). Defendant seeks judgment that 1) it did not breach the insurance contract by denying benefits because Mr. Jones's death was not caused by "accidental means"; and 2) even if Mr. Jones's death is covered by the Policy, Defendant did not breach the covenant of good faith and fair dealing because its denial of benefits was not unreasonable. The parties agree that California law applies to the issues to be decided here.

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* Only disputes over material facts will preclude summary judgment; "factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the moving party will have

United States District Court
Northern District of California

1    the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier

2    of fact could find other than for the moving party.  *See id.*  On an issue for which the opposing

3    party will have the burden of proof at trial, however, the moving party need only point out "that

4    there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

5    Once the moving party meets its initial burden, the nonmoving party must go beyond the

6    pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a

7    genuine issue for trial.  *See* Fed. R. Civ. P. 56.  It is not the task of the district court to scour the

8    record in search of a genuine issue of triable fact.  *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.

9    1996).  The nonmoving party has the burden of identifying with reasonable particularity the

10   evidence that precludes summary judgment.  *See id.*  If the nonmoving party fails to make this

11   showing, "[t]he moving party is entitled to a judgment as a matter of law." *Celotex Corp.,* 477

12   U.S. at 323.

13           **B.      The Policy Is An "Accidental Death" Policy**

14            The parties' dispute turns on whether the Policy is properly classified as an "accidental

15   means" or an "accidental death" insurance policy.  Under California law, the distinction is often

16   dispositive, as "policies requiring only that there be proof of accidental death have been construed

17   broadly, such that the injury or death is likely to be covered unless the insured virtually intended

18   his injury or death." *Weil v. Fed. Kemper Life Assurance Co.*, 7 Cal. 4th 125, 140 (1994) (internal

19   quotation marks omitted).  An "accidental means" policy requires not only "that death or injury is

20   unexpected or unforeseen," but also that there is "some element of unexpectedness in the

21   preceding act or occurrence which leads to the injury or death." *Olson v. Am. Bankers Ins. Co.*, 30

22   Cal. App. 4th 816, 822 (1994).  In other words, "[a] person may do certain acts, the result of which

23   acts may produce unforeseen consequences and may produce what is commonly called accidental

24   death, but the *means are exactly what the* [*person*] *intended to use, and did use, and was prepared*

25   *to use*.  The means were not accidental, but the result might be accidental." *Weil*, 7 Cal. 4th at 135

26   (emphasis in original) (internal quotation marks omitted).

27            Insurance companies specifically began limiting the coverage of some insurance policies to

28   "accidental means" once it became clear that California courts would construe "accidental death"

3

policies broadly.  *See Weil*, 7 Cal. 4th at 134 n.5.  As a result, "[b]y employing the phrase 'accidental means,' insurers can be relatively certain that their policies will be interpreted by the courts to have the limiting effect desired.  No such assurance is available when other terms are used. . . . [T]he whole rationale for insurers choosing to employ the phrase in the first place was to define more precisely the risk that was insured."  *Olson*, 30 Cal. App. 4th at 823.

Defendant argues that "[w]hile the . . . Policy does not use the word 'means' like some other policies, based on its plain and unambiguous wording, when read as a whole, it clearly and unambiguously requires that for benefits to be payable, an Accident must have caused an Accidental Bodily Injury or death."  Mot. at 11.  As such, Defendant argues that the Policy must be construed as an "accidental means" policy.  But California courts have clearly rejected this argument.  *See Olson*, 30 Cal. App. 4th at 824-25 ("Because [the insurer] failed to use the term 'means,' the policy is ambiguous.  Since uncertainties in an insurance contract are resolved against the insurer and in favor of imposing liability, we hold that the subject policy is of the 'accidental death' variety."); *see also Paulissen v. U.S. Life Ins. Co.*, 205 F. Supp. 2d 1120, 1128 (C.D. Cal. 2002) (same).  Here, the Policy provides coverage for "an Accident [that] results in a covered Loss," and defines "Loss" as "Accidental . . . Loss of Life."  Put together, the Policy provides coverage for "an accident that results in accidental loss of life."  At best, this language is ambiguous.  It certainly does not "clearly and unambiguously" limit the Policy to an "accidental means" policy.  *See Ritchie v. Anchor Cas. Co.*, 135 Cal. App. 2d 245, 253 (1955) ("There is a clear distinction between injury caused by 'accident' and one caused by 'accidental means.'").  As a result, the Court follows the reasoning articulated in *Olson* and *Paulissen*, resolves the uncertainties in the Policy against the insurer, and finds that the Policy is "of the 'accidental death' variety."  *Olson*, 30 Cal. App. 4th at 824-25; *Paulissen*, 205 F. Supp. 2d at 1128.

### C.    Plaintiff's Death Was Accidental And Therefore Is Covered By The Policy

Defendant appears to concede that the undisputed facts demonstrate that Mr. Jones's death was unintentional.  However, Defendant advances two arguments as to why the "accidental death" Policy nevertheless does not cover Mr. Jones's death.

First, Defendant argues that the heroin toxicity that caused Mr. Jones's death was not an

United States District Court
Northern District of California

1   "external" source, as required by the Policy.  Second, Defendant argues that Mr. Jones died of a

2   bodily malfunction (his body's reaction to the heroin overdose).

3          The Court does not find these arguments persuasive.  It is undisputed that the heroin that

4   killed Mr. Jones originated from outside of his body.  That Mr. Jones did not die until the heroin

5   entered his body does not transform the heroin from an external to an internal source.

6   Furthermore, if an individual dies, his body has by definition malfunctioned—in other words,

7   being run over by a truck will cause one's body to malfunction, resulting in death, but such a Loss

8   indisputably would be covered by the Policy.  The response of the insured's body to an external

9   trauma—such as the injection of excessive amounts of heroin—cannot properly be thought of as a

10  "bodily malfunction."

11         Defendant's motion for summary judgment as to Plaintiff's first cause of action is

12  accordingly denied.

13     **D.     Disputed Issues Of Fact Exist As To Whether Defendant Breached The
               Covenant Of Good Faith And Fair Dealing**
14

15         Every insurance contract "imposes on each party an implied duty of good faith and fair

16  dealing."  *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th

17  335, 345 (2001).  An insured's claim of bad faith turns on whether the insurer's investigation and

18  denial of benefits was reasonable.  *See id.* at 346.  However, the denial of benefits "due to the

19  existence of a genuine dispute . . . as to the existence of coverage" does not warrant liability for

20  bad faith conduct.  *Id.* at 347.

21         Defendant argues that Plaintiff's bad faith claim must fail even though Plaintiff's benefits

22  claim is covered by the Policy because Defendant's denial of the claim was not unreasonable.

23  Further, Defendant argues that its actions were reasonable because a "genuine dispute" existed

24  regarding the application of California law and whether the Policy constituted an "accidental

25  means" insurance policy.

26         The Court cannot find as a matter of law that Defendant did not breach the covenant of

27  good faith and fair dealing.  Plaintiff has presented facts relating to Defendant's inaccurate

28  representation of the coverage of the Policy to Plaintiff—specifically, the existence of narcotics

and intoxication exclusions.  Furthermore, the Court finds that Defendant could reasonably be expected "to know and apply California law distinguishing between accidental death and accidental means policies, especially in light of the fact that this distinction sets California apart from other jurisdictions." *Paulissen*, 205 F. Supp. 2d at 1131.  Defendant's motion for summary judgment as to Plaintiff's second cause of action is accordingly denied.

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.  The Court sets a case management conference for August 18, 2015, at 2:00 p.m., in Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco, at which the parties should be prepared to discuss the remainder of the case schedule.

**IT IS SO ORDERED.**

Dated: July 10, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge